Benjamin F. KOSDON and Sue S. Kosdon, Plaintiffs,

v.

Kenneth E. FRICK and F. J. McCarthy, acting as Review Committee, Defendants.

No. 1648.

United States District Court
S. D. California, N. D.
Jan. 28, 1957.

Benjamin F. Kosdon, Buttonwillow, Cal., for plaintiffs.

Laughlin E. Waters, U. S. Atty., Max T. Deutz, Asst. U. S. Atty., Chief Civil Division, Richard A. Lavine, Asst. U. S. Atty., and John S. Griffin, Atty., U. S. Dept. of Agriculture, Los Angeles, Cal., appearing for defendants.

JERTBERG, District Judge.

This matter under review comes before the Court for the second time. Under date of October 24, 1956 I made an order remanding the proceedings to the Review Committee, Area of Venue VI Kern County, State of California "for further hearing and findings of fact as to crop rotation practices followed on new farms on which cotton had been planted prior to 1953". Pursuant to said mandate the Review Committee held another hearing, and certified and filed in this Court a transcript of the record upon which the determination complained of was made, together with the findings of fact and conclusions of law.

These proceedings are authorized pursuant to Title 7 U.S.C.A. § 1365, to procure this Court's review of the determination of the plaintiffs' 1956 upland cotton acreage allotment made by the defendants. Plaintiffs are farmers in Kern County, California. Defendants, who are also farmers, were appointed by the Secretary of Agriculture to act as members of a review committee established pursuant to Title 7 U.S.C.A. § 1363, for the purpose of hearing appeals from farmers in the counties of Fresno, Tulare, Kern and Kings, of the State of California, who are dissatisfied with acreage allotments awarded them by the respective county Agricultural Stabilization and Conservation Committees. These county committees are composed of farmers who are elected by the farmers of their respective counties. They administer the acreage allotment and marketing quota program of the Department of Agriculture, pursuant to authority delegated to them under the applicable statutes and regulations.

In the order of October 24, 1956, this Court held that:

1. The Agricultural Adjustment Act of 1938 under which a 1956 cotton allotment was apportioned to the plaintiffs is not contrary to the Fifth Amendment of the Constitution, and does not unlawfully delegate powers and authority to the Secretary of Agriculture and his representative;

2. The Acreage Allotment Regulations for the 1956 crop of Upland Cotton were duly and regularly issued by the Acting Secretary of Agriculture on October 28, 1955 and are in accordance with the law;

3. The apportionment of cotton allotment to new farms on a basis different from that used for the apportionment of allotment to old farms is authorized under the law and the regulations of the Secretary of Agriculture;

4. The action of the Agricultural Stabilization and Conservation Committee of Kern County, State of California, and the Review Committee, Area of Venue VI, Kern County, State of California, holding that 77½ acres of plaintiffs' farm were not cropland and could not,

therefore, be considered in fixing a cotton allotment for plaintiffs' farm for 1956 was in accordance with the law and the regulations of the Secretary of Agriculture and should be and is sustained.

A brief history leading up to the present review by this Court might be helpful in placing the issue now before the Court in proper focus.

Pursuant to the applicable statutes, 7 U.S.C.A. §§ 1341–1346; in particular 7 U.S.C.A. § 1344(c), the 1956 upland cotton allotment for Kern County was set at 182,300 acres. 20 F.R. 8737, 8739. The county committee set aside 22,801.2 acres of this amount as a county reserve to be used:

" * * * for (A) establishing allotments for farms on which cotton was not planted (or regarded as planted under Public Law 12, Seventy-nine Congress) during any of the three calendar years immediately preceding the year for which the allotment is made [new farms], on the basis of land, labor, and equipment available for the production of cotton, crop-rotation practices, and the soil and other physical facilities affecting the production of cotton; and (B) making adjustments of the farm acreage allotments established under paragraphs (1) and (2) of this subsection [allotments for 'old farms'] so as to establish allotments which are fair and reasonable in relation to the factors set forth in this paragraph and abnormal conditions of production on such farms, or in making adjustments in farm acreage allotments to correct inequities and to prevent hardship * * *." 7 U.S.C.A. § 1344(f) (3).

Acting in accordance with Section 722.717(e) (3) (i) of the regulations (20 F.R. 8247, 8253), the county committee then made an estimate of the cropland on "new cotton farms" (farms on which cotton had not been planted in 1953, 1954 or 1955) and, on the basis of that estimate, determined that 300 acres from the county reserve should be used for establishing acreage allotments for such "new farms".

The portion of 7 U.S.C.A. § 1344(f) (3) quoted above, and the applicable regulations, Section 722.717(e) (3) (iii) (20 F.R. 8253), provide that the county committee is to establish an acreage allotment for each "new farm" on the basis of "land, labor, and equipment available for the production of cotton, crop-rotation practices, and the soil and other physical facilities affecting the production of cotton". Section 722.717(g) of the regulations (20 F.R. 8253) indicates that the committee can adopt a "mathematical formula or rule" for apportioning the reserve according to the specified factors.

Applications were granted for a 1956 cotton allotment for sixteen farms which qualified as "new farms" under the acreage allotment regulations for the 1956 crop of upland cotton in Kern County, California. Of the sixteen farms for which grants were made for allotments as new farms, six of them were small farms which received five acres of allotment or less per farm. Six of the sixteen farms received allotments in Kern County in 1956 as new farms on which no cotton had been planted during the years 1953, 1954 and 1955, but on which cotton had been planted in some year or years prior to 1953, four of the sixteen farms which received allotments in Kern County in 1956 as new farms (including the plaintiffs' farm) were farms on which no cotton had ever been planted. Allotments to new cotton farms on which cotton had been planted prior to 1953 were made on the basis of comparable old cotton farms in the same area, except where the amount of allotment requested was lower than that to which the farm was entitled. Allotments to new cotton farms on which cotton had never been planted were made on the basis of 40% of the indicated allotment as determined from

comparable old cotton farms in the same area, or 40% of the requested allotment, whichever was the lesser.

Plaintiffs make no complaint of the allotments made of five acres or less to the six new small farms above mentioned.

Included in the record certified to this Court by the Review Committee are Exhibits 1 and 2. Exhibit 1 is the history of the six new farms which received allotments in 1956 on which cotton was planted in some year or years prior to 1953. This exhibit reads as follows:

| Farm No. | Name | Years Last Planted To Cotton | Crops | Planted Since Years. |
|---|---|---|---|---|
| M 1048 | Annie H. Darbee | 44, 45, 46, 48, 49 50, 51 & 52 | Alfalfa | 53, 54, & 55 |
| E 362 | Gordon Downs | 1952 | Alfalfa | 53, 54 & 55 |
| R 96 | Leon Harris | 1952 | Permanent Pasture | 53, 54 & 55 |
| P 162 | Henry Kruger | 1949 | Alfalfa | 50, 51, 52, 53, & 54 |
|  |  |  | Barley | 1955 |
| W 391 | Marvin McIlroy | 48, 50, 51 & 52 | Summer Fallow | 53, 54 & 55 |
| P 156 | R. T. Minton | 48 and 49 | Oats | 1950 |
|  |  |  | Alfalfa | 51, 52, 53, 54 and 55 |

Exhibit 2 shows the determination made by the local committee of allotments for 1956 on the remaining four new farms on which cotton had not been planted prior to 1953. This exhibit is as follows:

| Farm No. | Name | Cropland | Allotment Base | Requested Allotment | Allotment After Applying County Factor .6763 | Final Allotment (40% of allotment shown in col. 6 or in col. 5 whichever is lower) |
|---|---|---|---|---|---|---|
|  |  |  |  | (5) | (6) |  |
| 56 ACP 166 | Beck & Sons | 600.0 | 198.7 | 80.0 | 134.4 | 32.0 |
| W 519 | W. Steve Clares | 270.0 | 130.8 | 270.0 | 88.5 | 35.4 |
| 56 ACP 229 | Benjamin Kosdon | 150.0 | 61.0 | 150.0 | 41.3 | 16.5 |
|  |  |  |  |  |  | 19.5 (Special reapportionment 3.0) |
| W 546 | Eleanor Woolley | 160.0 | 61.0 | 80.0 | 41.3 | 16.5 |

If the plaintiffs' farm had received an acreage allotment for 1956 on the same basis as the six new farms shown on Exhibit 1, it would have received an acreage of 41.3 acres, as shown on Exhibit 2. The plaintiffs' farm (listed on

Exhibit 2 as Benjamin Kosdon) received an acreage allotment for 1956 of 19.5 acres.

Plaintiffs contend that they are entitled to receive from the local committee treatment on the same basis as that accorded by the committee to the six new farms listed on Exhibit 1.

Defendants justify their separation of the new farms into the two classes shown on Exhibits 1 and 2 under the provisions of subsection iii of Section 722.717 "Acreage Allotment Regulations for the 1956 Crop of Upland Cotton". This subsection reads as follows:

*"Establishment of acreage allotments for new cotton farms. If the applicant's farm is eligible for a cotton acreage allotment, such allotment shall be established by the county committee on the basis of land, labor, and equipment available for the production of cotton; crop rotation practices; and the soil and other physical facilities affecting the production of cotton. The acreage allotment so determined for any such farm shall not exceed the smallest of (a) the acreage allotment established for old cotton farms in the county which are similar with respect to the foregoing factors, (b) the acreage allotment requested by the applicant, and (c) the indicated allotments established pursuant to paragraph (c) or (d) of this section for old cotton farms in the county which are similar except for the acreages planted to cotton during the years 1953, 1954 and 1955. The sum of the acreage allotments determined by the county committee for new cotton farms shall not exceed the acreage reserves available for such farms in the county under this subparagraph. The acreage allotments for new cotton farms shall be subject to review and approval by the State committee, as provided in Section 722.729."*

By stipulation of the parties it was agreed that the land, labor, and equipment for the production of cotton, the soil and other physical facilities affecting the production of cotton were the same as to all of the farms set forth in Exhibit 1 and Exhibit 2. The only basis for different acreage allotment treatment between the two classes of new farms was "crop rotation practices". The only difference between the crop rotation practices of the farms described in Exhibit 1 and the farms described in Exhibit 2 was that in some year or years prior to 1953 cotton had been planted on the farms listed in Exhibit 1, but had not been planted on the farms listed on Exhibit 2.

In the findings of fact of the Review Committee (Par. 6 of the findings) the committee found "on all six of the new farms on which cotton had been planted prior to 1953 the farms were planted to permanent pasture, alfalfa, barley or were summer fallowed during 1953, 1954 and 1955." The plaintiffs' farm was planted to alfalfa during the same years.

In paragraph 7 of the same findings of fact the Review Committee found "The profitable production of alfalfa or permanent pasture or other soil building practices requires a period of several years."

This finding applies with equal force to plaintiffs' farm. In Paragraph 2 of the conclusions of the determination of the Review Committee it is stated, "Cotton farms in Kern County on which cotton had been planted prior to 1953 but on which no cotton had been planted in 1953, 1954, or 1955, were in fact old cotton farms following long term crop rotation practices which entitled them to cotton allotments for 1956 on the same basis as old cotton farms on which shorter term rotation practices were being followed." The record is devoid of any evidence relating to the crop rotation practices followed on the six farms described in Exhibit 1, other than the record of crops planted in the years shown on said exhibit. None of the owners or operators of such farms testified that the absence of cotton planting in the years 1953, 1954 and 1955 was the result of crop rotation practices being followed by him.

Paragraph 3 of the conclusions states "New cotton farms on which no cotton had ever been planted were not entitled to the same proportion of allotment of cotton in 1956 as old cotton farms or new cotton farms on which cotton had been planted prior to 1953." I find no support in law for such conclusion.

The phrase "crop rotation practices" is not defined in the Agricultural Adjustment Act or in the regulations promulgated by the Secretary of Agriculture. There is no language in the Act or in the regulations relating to new cotton farms which places a premium on or gives preference to crop rotation practices which include the planting of cotton. Two of the farms listed on Exhibit 1 (Farm P 162 and P 156) were planted to cotton in 1949 but not thereafter until 1956. While I realize that no definite formula should be established for the rotation of crops since there are so many variable factors, there can be no basis in fact for finding that the two farms just mentioned were engaged in "long term crop rotation practices", as such practices relate to cotton. This same observation applies to Farm No. W–391 which lay fallow in 1953, 1954 and 1955. I realize that a stand of alfalfa, to be most profitable to the farmer and to contribute to soil building, should remain for three, four or five years, depending upon the character and quality of the soil, water and other factors. Webster's International Dictionary defines "crop rotation" as "the recurring succession of different crops on the same land, to maintain soil fertility, etc." Perhaps the planting of the same crop on different lands would constitute a crop rotation practice. I am unable to see from the record any difference in fact between the crop rotation practices of the plaintiffs, and the crop rotation practices of the six farmers listed on Exhibit 1, except the planting of cotton on such farms in some year or years prior to 1953, which, so far as the record shows, was without reference to "crop rotation practices."

The scope of judicial review in a proceeding of this kind is stated in Title 7 U.S.C.A. § 1366. This section states that the review by the Court shall be limited to questions of law and the finding of fact by the Review Committee, if supported by evidence, shall be conclusive. The Court shall affirm the Review Committee's determination if the Court determines that the same is in accordance with law. If the Court determines that such determination is not in accordance with law, "the court shall remand the proceeding to the review committee with direction either to make such determination as the court shall determine to be in accordance with law or to take such further proceedings as, in the court's opinion, the law requires."

I am satisfied that the local committee acted properly within the powers granted to it in allocating 300 acres of Kern County's reserve for new farms. I do not question the action of the local committee in its cotton acreage allotment to the farms shown on Exhibit 1. I am, however, satisfied that there is no basis in law or in fact under the record in this case to support the action of the local committee giving different treatment, in determining the acreage allotment to which plaintiffs' new farm was entitled, than the treatment given to the six farms set forth in Exhibit 1. This proceeding is therefore remanded to the Review Committee with directions to grant to the plaintiffs an acreage allotment for their farm for the year 1956 under the same formula by which cotton acreage allotments for the year 1956 were made to the six farms described on Exhibit 1.

Counsel for the defendants are directed, in accordance with the rules of this Court, to prepare form of appropriate order consistent with the views herein expressed.

The Clerk of this Court is directed to forthwith mail copies of this order to all counsel.